MAYER BROWN LLP
DAVINA PUJARI, SBN 183407
CHRISTOPHER A. RHEINHEIMER, SBN 253890
101 2nd Street, 17th Floor
San Francisco, CA 94105
Telephone: (415) 874-4230
Facsimile: (650) 331-2060
dpujari@mayerbrown.com
crheinheimer@mayerbrown.com

*Attorneys for Defendants Tetra Tech, Inc. and Tetra Tech EC, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC and CP DEVELOPMENT CO., LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>TETRA TECH, INC.; TETRA TECH EC, INC.; and ROES 1-100 Inclusive,<br><br>Defendants. | Case No. 3:20-cv-01481-JD<br><br>**DEFENDANTS TETRA TECH, INC. AND TETRA TECH EC, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 24, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James A. Donato |
| CPHP DEVELOPMENT, LP, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TETRA TECH EC, INC., et al.,<br><br>Defendants. | Case No. 3:20-cv-01485-JD |

**NOTICE OF MOTION AND MOTION**

Please take notice that on Thursday, September 24, 2026, at 11:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Judge James A. Donato, United States District Court Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California, Defendants Tetra Tech EC, Inc. ("TtEC") and Tetra Tech, Inc. (with TtEC, "Tetra Tech") will and hereby do move the Court for an order dismissing these cases for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3), or in the alternative, if the Court finds it does have subject matter jurisdiction, for an order granting summary judgment in favor of Tetra Tech pursuant to Federal Rules of Civil Procedure 12(c), 12(d), 12(h)(2), and 56.

The Court lacks subject matter jurisdiction over these cases because Plaintiffs bring claims governed by the Price-Anderson Act ("PAA") arising out of or resulting from injury from radiation and a nuclear incident, but Plaintiffs do not meet the PAA's jurisdictional requirements because they do not claim—and cannot prove—physical injuries or property damages. Alternatively, if the Court does have subject matter jurisdiction, summary judgment for Tetra Tech is warranted because the undisputed record shows that Plaintiffs have not suffered any physical injury or property damage for which they can recover under the PAA, and the PAA therefore bars their claims as a matter of law.

This Motion is made upon the Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Christopher A. Rheinheimer filed herewith, and such other written and oral argument as the Court may entertain on this Motion.

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1
II. STATEMENT OF THE ISSUES TO BE DECIDED ........ 2
III. STATEMENT OF FACTS ........ 2
  A. History Of HPNS ........ 2
  B. Developers' Claims ........ 3
    1. Five Point ........ 3
    2. Lennar ........ 4
IV. LEGAL STANDARDS ........ 5
  A. Motion To Dismiss For Lack Of Subject Matter Jurisdiction ........ 5
  B. Motion For Summary Judgment ........ 5
V. ARGUMENT ........ 5
  A. Developers' Claims Are PAA Claims But Conflict With PAA Requirements ........ 6
    1. The PAA Governs Claims Arising From A Nuclear Incident ........ 6
    2. Developers' Claims Are Subject To The PAA ........ 8
    3. Developers Do Not Meet The PAA's Jurisdictional Prerequisite ........ 10
  B. The Court Should Dismiss For Lack of Subject Matter Jurisdiction ........ 11
  C. Alternatively, The Court Should Grant Summary Judgment To Tetra Tech ........ 12
VI. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 12

*In re Apple iPhone Antitrust Litig.*,
846 F.3d 313 (9th Cir. 2017) ........ 13

*Ashoff v. City of Ukiah*,
130 F.3d 409 (9th Cir. 1997) ........ 5

*Att'ys Tr. v. Videotape Comput. Prods., Inc.*,
93 F.3d 593 (9th Cir. 1996) ........ 5

*In re Berg Litig.*,
293 F.3d 1127 (9th Cir. 2002) ........ 1, 7, 10, 11

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
639 F.3d 186 (5th Cir. 2011) ........ 6, 9

*Dumontier v. Schlumberger Tech. Corp.*,
543 F.3d 567 (9th Cir. 2008) ........ 7, 10, 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
546 F.3d 981 (9th Cir. 2008) ........ 7

*El Paso Nat. Gas Co. v. Neztsosie*,
526 U.S. 473 (1999) ........ 8, 12

*Golden v. CH2M Hill Hanford Grp., Inc.*,
528 F.3d 681 (9th Cir. 2008) ........ 6

*In re Hanford Nuclear Rsrv. Litig.*,
534 F.3d 986 (9th Cir. 2008) ........ 6, 7, 9

*Hunter v. Boeing N. Am., Inc.*,
2014 WL 12586441 (C.D. Cal. May 15, 2014) ........ 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........ 5

*Lawson v. Gen. Elec. Co.*,
140 F. Supp. 3d 968 (N.D. Cal. 2015) ........ 6, 7

*Matthews v. Centrus Energy Corp.*,
15 F.4th 714 (6th Cir. 2021) ........ 8

*Matthews v. Centrus Energy Corp.*,
2020 WL 4284922 (S.D. Ohio July 27, 2020) .......... 9

*N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*,
594 F.3d 1149 (9th Cir. 2010) .......... 11

*Nieman v. NLO, Inc.*,
108 F.3d 1546, 1553 (6th Cir. 1997) .......... 6

*O'Conner v. Commonwealth Edison Co.*,
13 F.3d 1090 (7th Cir. 1994) .......... 6

*Parra v. PacifiCare of Ariz., Inc.*,
715 F.3d 1146 (9th Cir. 2013) .......... 11

*Steward v. Honeywell Int'l Inc.*,
469 F. Supp. 3d 872 (S.D. Ill. 2020) .......... 6

*In re TMI Litig. Cases Consol. II*,
940 F.2d 832 (3d Cir. 1991) .......... 7

*Williams v. United Airlines, Inc.*,
500 F.3d 1019 (9th Cir. 2007) .......... 11

**Statutes and Regulations**

42 U.S.C. § 2014(q) .......... *passim*

42 U.S.C. § 2014(w) .......... 3, 4, 6, 8

42 U.S.C. § 2014(ii) .......... 5, 6, 7

42 U.S.C. § 2210(n)(2) .......... 6

40 C.F.R. Pt. 300, App. B .......... 2

**Rules**

Fed. R. Civ. P. 12(h)(2) .......... 13

Fed. R. Civ. P. 12(h)(3) .......... 5, 13

Fed. R. Civ. P. 56(a) .......... 5, 12, 13

Civil L.R. 3-12 .......... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Tetra Tech EC, Inc. ("TtEC") and Tetra Tech, Inc. (with TtEC, "Tetra Tech") move to dismiss the *Five Point* and *Lennar* cases for lack of subject matter jurisdiction, and in the alternative, move for summary judgment. Under the Price-Anderson Act ("PAA"), the Court lacks subject matter jurisdiction over the claims brought by the *Five Point* plaintiffs (collectively, "Five Point") and *Lennar* plaintiffs (collectively, "Lennar"), or—if the Court does have jurisdiction—judgment for Tetra Tech is warranted. Tetra Tech brings this motion in light of the Court's recent order in the related *Pennington* case applying the PAA and granting Tetra Tech summary judgment. Order re Summ. J., No. 18-cv-5330, Dkt. No. 413 ("*Pennington* Order"). Tetra Tech respectfully brings this motion now, in advance of trial, to raise an issue about the Court's jurisdiction and its power to grant relief that was indicated by the *Pennington* Order.

The PAA provides exclusive federal jurisdiction over claims arising out of or resulting from a "nuclear incident." But the PAA also *limits* federal courts' jurisdiction, barring claims arising out of or resulting from a nuclear incident that are not for physical injury or physical property damage. That limit can play out in federal litigation in a few different ways. *First*, if a plaintiff asserts claims for physical injury or physical property damage from a nuclear incident, a federal court has jurisdiction, but cannot award relief if the plaintiff fails to prove the PAA's elements. That is what this Court ruled in *Pennington*: homeowners claimed to suffer physical injury and property damage from radiation (a "nuclear incident") but lacked the evidence to prove those harms, so the Court granted summary judgment against them. *Second*, if a plaintiff asserts claims arising out of or resulting from a nuclear incident, but the plaintiff is not claiming physical injury or physical property damage, the claims do not meet the PAA's "jurisdictional prerequisite." *In re Berg Litig.*, 293 F.3d 1127, 1131 (9th Cir. 2002). The claims then are simply barred, and the court lacks jurisdiction over them.

That is why the Court lacks jurisdiction in the *Five Point* and *Lennar* cases. Five Point and Lennar (collectively, "Developers") assert claims arising out of or resulting from a "nuclear incident"—radiological contamination at the Hunters Point Naval Shipyard ("HPNS") and

TtEC's alleged failure to properly remediate that contamination—so the PAA governs their claims. But Developers are not claiming physical injury or property damage from the nuclear incident. Instead, they bring claims for business losses from delays in the redevelopment of HPNS that allegedly resulted from the nuclear incident. Those claims do not meet the PAA's jurisdictional prerequisite. The Court should dismiss them.

In the alternative, even if the PAA does not strictly deprive the Court of jurisdiction to hear Five Point's and Lennar's claims, the PAA still bars their claims, and accordingly, the Court should grant summary judgment to Tetra Tech.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether under the PAA the Court has subject matter jurisdiction over these cases?
2. If the Court decides that it has subject matter jurisdiction, whether under the PAA the Court should grant summary judgment to Tetra Tech in these cases?

## III. STATEMENT OF FACTS

### A. History Of HPNS

The history of HPNS is not in dispute. HPNS was a U.S. Navy shipyard from 1945 to 1974 and home to the Naval Radiological Defense Laboratory ("NRDL") from 1948 to 1960. Ex. 1, EPA Superfund Site Profile.[1] During that time, Navy operations included the use of radioactive material, decontamination of ships used for nuclear testing, and NRDL research into radiation. Ex. 2, NAVSEA Historical Radiological Assessment 1-3 to 1-4. Those operations resulted in low levels of radiation at HPNS. *Id.* at 1-6, 9-3. Investigation into radioactivity at HPNS contributed to EPA designating it a Superfund site in 1989. *Id.* at 2-3; *see* 40 C.F.R. Pt. 300, App. B. In the 2000s, the Navy hired Tetra Tech to remediate radiological contamination at HPNS. *See* Compl. ¶ 23, No. 20-cv-1481, Dkt. No. 1 ("*Five Point* Compl."); First Am. Compl. ¶ 3, No. 20-cv-1485, Dkt. No. 118 ("*Lennar* Compl."). The undisputed record thus shows a "nuclear incident" at HPNS, namely radiological contamination at HPNS that TtEC allegedly failed to properly remediate. 42 U.S.C. § 2014(q) ("nuclear incident" includes "any occurrence" causing "damage

[1] All exhibits cited herein are attached to the Declaration of Christopher A. Rheinheimer filed concurrently in support of this Motion.

to property, or loss of use of property, arising out of or resulting from the radioactive . . . properties of" radioactive material).

### B. Developers' Claims

The "nuclear incident" led to litigation over HPNS, including the *Pennington* case in which the Court granted judgment for Tetra Tech, and these related cases brought by Developers.[2] In these cases, the pleadings and discovery make two things clear. *First*, Developers assert claims arising from radiological contamination at HPNS and Tetra Tech's alleged failure to perform proper remediation. *Second*, Developers do not seek to recover for physical injury or property damage.

#### 1. Five Point

Five Point is a real estate developer claiming that Tetra Tech performed inadequate radiological remediation for the U.S. Navy on the "Phase II" parcels at HPNS, causing delays in the transfer of those parcels to Five Point for redevelopment and ultimately reducing Five Point's return on investment. *Five Point* Compl. ¶¶ 1-8.

Five Point's claims against Tetra Tech necessarily assert "legal liability arising out of or resulting from" "the radioactive . . . properties" of a nuclear incident. 42 U.S.C. §§ 2014(q), (w). Five Point asserts that Navy activities at HPNS over decades resulted in the risk of "contamination by radionuclides." *Five Point* Compl. ¶ 17. After the Navy base was deactivated, the Navy planned to transfer the properties at HPNS for redevelopment. *Id.* ¶ 1. But the Navy could not transfer the properties until after the radiation was cleaned up. *Id.* ¶ 19. As a Five Point witness put it, "the radiological issues had to be remediated" first. Ex. 3, Totah Dep. Tr. 177. That is why the Navy hired TtEC to remediate "residual radioactive contamination." *Five Point* Compl. ¶¶ 23-24. According to Five Point, however, Tetra Tech employees "falsified" reports on the remediation work by "substituting clean soil" for samples from areas that were "not yet sufficiently remediated." *Id.* ¶¶ 25-26. Once that problem became known, the Navy decided to rework Tetra Tech's radiological remediation, which allegedly stalled the transfer of properties to

[2] The Court related these cases to *Pennington* because they concern "the same parties, properties, transaction, or event." Civil L.R. 3-12; *see* Related Case Order, No. 3:20-cv-1481, Dkt. No. 17.

Five Point, delaying Five Point's redevelopment activities. *Id.* ¶¶ 53-54.

Although Five Point's claims arise from radiological issues, Five Point does not assert personal injury or property damage claims traceable to those issues. Five Point cannot assert any physical property damage because Five Point does not own the properties at issue—the Phase II parcels have not been transferred to Five Point, Ex. 3, Totah Dep. Tr. 28 ("To this day, . . . Five Point [has] not received one square foot of land at the shipyard.")—and Five Point admits the parcels must be remediated before they are transferred, *Five Point* Compl. ¶¶ 19, 42. Instead, Five Point asserts business torts against Tetra Tech (for fraud, negligence, and economic interference) to recover for "economic and reputational harm" from the delayed property transfers. *Id.* ¶ 55. Five Point asserts that it has been prevented from realizing profits on the development project due to the delayed schedule and that the value of the properties has been diminished. *Id.*

**2. Lennar**

Lennar claims that Tetra Tech's allegedly inadequate radiological remediation work at HPNS created public stigma, and that has resulted in slower sales and smaller profits on the "Phase I" redevelopment of Parcel A, which was transferred to Lennar in 2005. *Lennar* Compl. ¶¶ 1-13, 35.

Lennar's claims against Tetra Tech also assert "legal liability arising out of or resulting from" "the radioactive . . . properties" of a nuclear incident. 42 U.S.C. §§ 2014(q), (w). Like Five Point, Lennar alleges that the Navy's "historic operations had left behind radiological . . . contamination in some areas" at HPNS, *Lennar* Compl. ¶ 1; Tetra Tech was hired to remediate contamination; *id.* ¶ 3; and Tetra Tech falsified soil samples, substituting clean soil for samples "from contaminated areas," *id.* ¶ 65. Lennar alleges that Parcel A is safe and was historically used "for officer housing and not for activities that would have resulted in radiological contamination." *Id.* ¶ 11; *see* Ex. 4, Hochstoeger Dep. Tr. at 259-60 (testifying that Lennar does not believe that Parcel A is contaminated); Ex. 5, Lennar's Response to USA RFA No. 7 (admitting Parcel A is safe). But Lennar contends that the disclosures about Tetra Tech led to public concern over radiological contamination across the entire site. *Lennar* Compl. ¶¶ 10-11.

Like Five Point, Lennar does not assert claims for personal injury or property damage

traceable to radiological issues at HPNS. Lennar asserts business torts against Tetra Tech (for intentional misrepresentation, negligence, and economic interference) to recover for "financial and reputational harm." *Id*. ¶ 11. It claims that the stigma attached to HPNS has slowed sales of completed units at Parcel A, impeded development, and depressed property values. *Id*. ¶¶ 278-83.

## IV. LEGAL STANDARDS

### A. Motion To Dismiss For Lack Of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction having only the powers authorized by the U.S. Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs have the burden to establish jurisdiction. *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997). A court "must dismiss" a case if it lacks jurisdiction. Fed. R. Civ. P. 12(h)(3). Lack of subject matter jurisdiction is never waived and may be raised by a party "at any time." *Id*.; *see Att'ys Tr. v. Videotape Comput. Prods., Inc.*, 93 F.3d 593, 594-95 (9th Cir. 1996).

### B. Motion For Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Pennington* Order 2-8 (granting Tetra Tech summary judgment under the PAA).

## V. ARGUMENT

Under the PAA, the Court lacks authority either to hear Developers' claims or to grant Developers the relief they seek from Tetra Tech. As the Court recognized in *Pennington*, the PAA comprehensively governs claims asserting injuries arising from a nuclear incident, and bars those claims when they do not involve physical injury or property damage traceable to the nuclear incident. 42 U.S.C. §§ 2014(q), (ii); *see Pennington* Order 4-7. Developers' claims indisputably arise from a nuclear incident: radiological contamination at HPNS and TtEC's alleged failure to remediate that contamination. Also indisputably, Developers' claims do not meet the PAA's jurisdictional prerequisite: Developers do not seek to recover for any physical injury or property damage from the nuclear incident. Therefore, the Court lacks jurisdiction to hear the claims, or in the alternative, Tetra Tech is entitled to judgment as a matter of law. Either way, the necessary outcome is that Developers' claims against Tetra Tech may not advance to trial.

### A. Developers' Claims Are PAA Claims But Conflict With PAA Requirements

#### 1. The PAA Governs Claims Arising From A Nuclear Incident

The PAA is "the federal statute governing nuclear accidents." *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 995 (9th Cir. 2008). Congress "enacted the PAA with twin goals in mind: to provide an incentive to contractors to participate in the nuclear industry by limiting their liability, and to compensate victims of nuclear accidents." *Id*. at 1002; *see Lawson v. Gen. Elec. Co.*, 140 F. Supp. 3d 968, 972 (N.D. Cal. 2015). To accomplish those goals, the PAA creates a "precise, comprehensive litigation scheme for injuries sustained in a nuclear accident." *In re Hanford*, 534 F.3d at 1002. That scheme has several key features.

First, the PAA creates a new federal cause of action for "public liability." 42 U.S.C. § 2210(n)(2). As relevant here, "public liability" means "any legal liability arising out of or resulting from a nuclear incident." *Id*. § 2014(w). There is original jurisdiction over a public liability action in the federal district court for the district where the nuclear incident occurred. *Id*. § 2210(n)(2).

Second, the PAA provides that "*any* suit asserting public liability" is a federal "public liability action." 42 U.S.C. § 2014(ii) (emphasis added). That makes the PAA "the exclusive means of compensating victims for any and all claims arising out of nuclear incidents." *In re Hanford*, 534 F.3d at 1009; *see Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008). If "state law claims constitute a 'public liability action arising out of or resulting from a nuclear incident,' such claims must be brought pursuant to the PAA." *Steward v. Honeywell Int'l Inc.*, 469 F. Supp. 3d 872, 878 (S.D. Ill. 2020); *see Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011) ("a plaintiff who asserts any claim arising out of a 'nuclear incident' . . . 'can sue under the [PAA] or not at all'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997)); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1101 (7th Cir. 1994).

Third, the PAA defines a "nuclear incident" to mean (in relevant part) "any occurrence . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive toxic, explosive, or other

hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q). As a result, the PAA's scope extends beyond actions seeking to recover for extraordinary nuclear events. "Courts have construed the phrase 'nuclear incident' broadly," finding a "nuclear incident" under the PAA "regardless of the size of the occurrence." *Lawson*, 140 F. Supp. 3d at 972.

Fourth, the PAA provides that "the substantive rules for decision in [public liability] action[s] shall be derived from the law of the State in which the nuclear incident involved occurs, *unless* such law is *inconsistent* with the provisions of such section." 42 U.S.C. § 2014(ii) (emphasis added). State law "is inconsistent with" the PAA if it allows for liability from a nuclear incident that exceeds the liability permitted under the PAA's definition of a nuclear incident. Injury from a nuclear incident "is compensable only if it causes one of the harms on" section 2014(q)'s "list," *i.e.*, "'bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from'" radioactive materials. *Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 569 (9th Cir. 2008); *accord In re Berg*, 293 F.3d at 1131.

Fifth, federal courts' jurisdiction over public liability actions is both exclusive and limited. The PAA "provide[s] exclusive federal jurisdiction over all claims arising from a nuclear incident." *In re Hanford*, 534 F.3d at 997; *see In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856-57 (3d Cir. 1991) (PAA "channels all legal liability to the federal courts"). At the same time, the PAA "grants only limited jurisdiction" to the federal courts, because jurisdiction is limited to claims arising from a nuclear incident, and a "nuclear incident" requires a "present physical injury." *In re Berg*, 293 F.3d at 1133. "Physical harm to persons or property is thus a jurisdictional prerequisite." *Id*. at 1131.[3] When a plaintiff's claims arise from a nuclear incident

[3] The Ninth Circuit has stated that *In re Berg* used "jurisdictional" in a "loose" sense to mean that certain claims were not "compensable" under the PAA. *In re Hanford*, 534 F.3d at 1009. But the Ninth Circuit has declined to rigidly enforce any distinction between cases where federal jurisdiction is lacking and cases where federal law simply bars plaintiffs' claims. *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984, 985 n.3, 991 (9th Cir. 2008) (affirming dismissal for lack of subject-matter jurisdiction when the plaintiff's claims did not meet "jurisdictional prerequisites" of federal statute, and declining to address "whether the issue was properly viewed as one of federal question subject matter jurisdiction or of a failure to state a claim under federal law" because "the result and analysis are the same").

but the plaintiff does not seek to recover for a present physical injury, the PAA precludes those claims. *Id*. (holding that PAA jurisdiction did not include medical monitoring or emotional distress claims). *Cf. El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 & n.6 (1999) (the PAA's "unusual preemption" scheme provides a "federal forum" for PAA claims that "do not conflict with" the PAA, thereby "resembl[ing]" the "complete-preemption doctrine").

Thus, plaintiffs claiming damages from a nuclear incident must plead and prove some present physical injury in federal court. This Court's order applying the PAA in *Pennington* is instructive. There, plaintiffs who purchased homes in Parcel A sued Tetra Tech, claiming physical property damage causing diminished property values due to TtEC's allegedly inadequate remediation. *Pennington* Order 4-5. But the homeowners ultimately were unable to prove physical damage, so they could not recover under the PAA and the Court granted Tetra Tech summary judgment. *Id*. at 6-7. As discussed below, Developers seek damages from the same nuclear incident, but are not even claiming to have suffered a physical injury traceable to it. The PAA precludes those claims and the Court lacks jurisdiction over them.

**2. Developers' Claims Are Subject To The PAA**

Here, Developers' claims are "within the purview of the PAA," and must satisfy the PAA's jurisdictional requirements, because they assert "'legal liability arising out of or resulting from a nuclear incident' against Tetra Tech." *Pennington* Order 5 (quoting 42 U.S.C. § 2014(w)). To determine whether a plaintiff asserts liability "arising out of or resulting from a nuclear incident," courts must "look beyond the labels plaintiffs use . . . and instead examine the substance of the allegations to determine the nature of the cause of action." *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 722 (6th Cir. 2021) (internal quotation marks omitted).

The substance of Developers' claims is that they seek to hold Tetra Tech liable in connection with a "nuclear incident," *i.e.*, occurrences causing physical injury from radioactive materials. *See* 42 U.S.C. § 2014(q). Developers each allege chains of causation connecting their claimed injuries to radiological contamination that physically impacted properties at HPNS. Five Point claims damages from delays in developing the Phase II parcels. According to Five Point, those delays resulted because historic Navy activities caused radiological contamination at HPNS,

and the Navy decided to rework Tetra Tech's allegedly inadequate remediation before transferring the parcels. *See Five Point* Compl. ¶¶ 16-31, 53-55. Lennar claims damages from stigma attaching to the redevelopment of HPNS. According to Lennar, that stigma resulted because the historic radiological contamination impacting parcels adjacent to Parcel A at HPNS induced public concern over the development project when alleged misconduct by TtEC employees was publicly disclosed. *See Lennar* Compl. ¶¶ 1-13. In both cases, Developers seek to hold Tetra Tech liable for injuries that they trace to a "nuclear incident": the radiological contamination at HPNS and Tetra Tech's allegedly inadequate remediation.

Because they assert liability for injuries from a nuclear incident, Developers' cases qualify as PAA public liability actions no less than the *Pennington* plaintiffs'. Although Developers do not claim that Tetra Tech is responsible for the original release of radioactive materials at HPNS, that is immaterial. The *Pennington* plaintiffs likewise did not claim that Tetra Tech was originally responsible for the radiation that purportedly impacted their property values, yet the Court ruled that their claims against Tetra Tech arose out of or resulted from a nuclear incident because they were seeking to hold Tetra Tech liable for damages traceable to radiological contamination. *Pennington* Order 5. The same is true in these *Pennington*-related cases. In fact, Developers' claims against Tetra Tech necessarily arise from the historical radiological contamination at HPNS, because they allege that Tetra Tech was involved at HPNS in the first place only because the Navy hired it to remediate that contamination. *Five Point* Compl. ¶ 23; *Lennar* Compl. ¶ 3.

Consistent with this Court's *Pennington* order, lawsuits against remediation contractors for allegedly failing to remediate radiological contamination are governed by the PAA because they arise out of or result from a nuclear incident. *See Matthews v. Centrus Energy Corp.*, 2020 WL 4284922, at *1, 3 (S.D. Ohio July 27, 2020), *aff'd*, 15 F.4th 714 (6th Cir. 2021). Applying the PAA to limit liability of environmental engineers contracted to remediate radiological contamination is just what this Court did in *Pennington*, and it promotes the PAA's objective to "provide an incentive to contractors to participate in the nuclear industry by limiting their liability." *In re Hanford*, 534 F.3d at 1002; *see Cotroneo*, 639 F.3d at 190, 195 (applying PAA to claims against remediation contractors); *Hunter v. Boeing N. Am., Inc.*, 2014 WL 12586441, at

*4-5 (C.D. Cal. May 15, 2014) (same).

**3. Developers Do Not Meet The PAA's Jurisdictional Prerequisite**

Although Developers' claims are within the purview of the PAA, Developers "cannot recover under the PAA because they have not suffered any injury that falls under the scope of 42 U.S.C. § 2014(q), *i.e.*, 'bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property.'" *Pennington* Order 7. Developers simply are not asserting any claim meeting that "jurisdictional prerequisite" of the PAA. *In re Berg*, 293 F.3d at 1131.

Developers each claim that they are seeking to recover for "economic and reputational harm" arising from Tetra Tech's allegedly deficient remediation work. *Five Point* Compl. ¶ 55; *see Lennar* Compl. ¶ 11 ("financial and reputational harm"). Five Point claims lost profits and diminished property values from development delays. *Five Point* Compl. ¶ 55. Similarly, Lennar claims lost profits and diminished property values from public stigma. *Lennar* Compl. ¶¶ 278-83. Lost profits and diminished property values, without more, are not "compensable" physical injuries under the PAA. *Dumontier*, 543 F.3d at 569.

Developers are not claiming any physical injury or physical damage to property encompassed by 42 U.S.C. § 2014(q). Neither Five Point nor Lennar assert that they suffered physical property damage. Five Point cannot do so because it does not own the properties at issue, and because the properties must be remediated before they can be transferred to Five Point. *See* Ex. 3, Totah Dep. Tr. 28 (testifying that Five Point has not received any properties at HPNS); *Five Point* Compl. ¶¶ 19, 42 (asserting that properties must be remediated before Navy will transfer them). And although Lennar owns Parcel A, it disclaims physical property damage, insisting that Parcel A is not contaminated. *Lennar* Compl. ¶¶ 11-13, 281-82; Ex. 4, Hochstoeger Dep. Tr. 259-60; Ex. 5, Lennar's Response to USA RFA No. 7 (admitting Parcel A is safe). Five Point and Lennar cannot assert any compensable "loss of use of property" either. 42 U.S.C. § 2014(q). Their claimed losses are purely economic. Purely economic losses cannot meet the PAA's requirement of "physical harm to persons or property." *In re Berg*, 293 F.3d at 1131.

**B. The Court Should Dismiss For Lack of Subject Matter Jurisdiction**

Because Developers bring PAA claims but do not assert any injury meeting the PAA's "jurisdictional prerequisite" of "physical harms to persons or property," the PAA bars Developers' claims. *In re Berg*, 293 F.3d at 1131. Therefore, this Court lacks subject matter jurisdiction over the Developers' cases. *See, e.g.*, *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1151-52 (9th Cir. 2010) (affirming dismissal for lack of subject matter jurisdiction because the plaintiff did not have the claimed right of action under federal law); *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1021-25 (9th Cir. 2007) (same).[4]

The Court can dismiss Developers' claims here for lack of jurisdiction even though it exercised jurisdiction in *Pennington* in granting judgment to Tetra Tech. The *Pennington* plaintiffs claimed "physical harms to persons or property." *In re Berg*, 293 F.3d at 1131; *see Pennington* Order 5 ("The TAC alleges that defendants 'are all responsible for the loss of value in Plaintiffs' homes due to the continuing toxic nature of the Superfund and former nuclear testing site upon and near Plaintiffs' homes, and the ensuing health and other issues that waste has caused, is causing, and will continue to cause until it is remediated . . . ." (quoting Third Am. Compl. ¶ 2, No. 18-cv-5330, Dkt. No. 157)). As a result, the Court had jurisdiction but granted summary judgment when the plaintiffs later failed to prove those claims. *Pennington* Order 6-8.

The situation is different here. Although Developers assert liability arising out of or resulting from a nuclear incident (like the *Pennington* plaintiffs), they do not assert claims for any physical injuries or physical harm to their properties (unlike the *Pennington* plaintiffs). The Court should therefore dismiss here for lack of subject matter jurisdiction.

Developers cannot avoid dismissal by relying on any alternative basis for federal jurisdiction over the state-law claims they pleaded. For instance, Five Point and Lennar each pleaded federal jurisdiction based on federal enclave jurisdiction. *Five Point* Compl. ¶ 13; *Lennar* Compl. ¶ 20; *cf.* Order re Remand, No. 18-cv-5330, Dkt. No. 57 (upholding federal enclave

---

[4] As noted *supra* n.3, while Tetra Tech maintains that the Court lacks jurisdiction, the Ninth Circuit has been "inconsistent" in approving dismissal for lack of jurisdiction when federal law bars a plaintiff's claims. *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1151 & n.1 (9th Cir. 2013). If the Court does have jurisdiction, however, it should exercise it to award judgment to Tetra Tech as a matter of law. *See infra*, pp. 12-13.

jurisdiction in *Pennington*). However, the PAA provides the exclusive basis for jurisdiction over Developers' claims, "preempt[ing]" the state-law claims and "transform[ing]" them "into a federal action" that may "not conflict with" the PAA. *El Paso Nat. Gas Co.*, 526 U.S. at 484 & n.6. Because the Developers' claims conflict with the PAA, the claims are jurisdictionally barred, leaving no viable cause of action over which the Court could exercise either federal enclave jurisdiction or any alternative basis for federal jurisdiction.

### C. Alternatively, The Court Should Grant Summary Judgment To Tetra Tech

In the alternative, if the Court decides that it has subject matter jurisdiction, the Court should grant summary judgment in these cases to Tetra Tech. Assuming jurisdiction exists, Developers cannot recover against Tetra Tech under the PAA for the same reasons discussed above. The PAA governs Developers' claims against Tetra Tech because Developers assert liability arising out of or resulting from a nuclear incident. *See supra*, pp. 8-9. Further, Developers are not asserting that they have suffered any physical injury or physical property damage for which they may recover under the PAA—and in fact, the undisputed record shows that they have not suffered any physical injury or property damage for which they may recover. *See supra*, p. 10.

That "is enough to warrant summary judgment" for Tetra Tech. *Pennington* Order 7. There is no "genuine dispute as to any material fact" about whether Developers suffered a compensable physical injury or property damage. Fed. R. Civ. P. 56(a). They have not. Five Point does not own the properties at issue, which must be remediated before transfer to Five Point. Ex. 3, Totah Dep. Tr. 28, 177; *Five Point* Compl. ¶¶ 19, 42. Lennar disclaims physical harm to properties it owns. Ex. 4, Hochstoeger Dep. Tr. 259-60; Ex. 5, Lennar's Response to USA RFA No. 7. Neither Five Point nor Lennar have adduced evidence showing any physical injury or physical harm to property traceable to radiological contamination at HPNS. They assert only purely economic losses. The parties' disputes over Tetra Tech's conduct and whether it caused Developers' alleged losses are immaterial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that fact disputes are material only if they "might affect the outcome of the suit under the governing law"). Because the PAA precludes Developers from recovering absent

evidence of a physical injury or property damage from the nuclear incident, Tetra Tech is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Dumontier*, 543 F.3d at 569.

As in *Pennington*, Tetra Tech has not waived the PAA as a basis for summary judgment. *See Pennington* Order 7. There is no waiver of Tetra Tech's summary judgment argument for three reasons. First, Tetra Tech's basis for summary judgment is that Developers are not asserting claims for which they can recover under the PAA, and Tetra Tech sufficiently preserved that argument by alleging in its answers that Developers failed to state a claim for relief. Answer p. 10, No. 20-cv-1481, Dkt. No. 66; Answer p. 39, No. 20-cv-1485, Dkt. No. 125.[5] Second, even a defendant who fails to preserve it does not waive the defense that the plaintiff is asserting claims for which relief simply may not be granted. *See* Fed. R. Civ. P. 12(h)(2); *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-19 (9th Cir. 2017) (holding that failure-to-state-a-claim defenses are not waived even if not timely raised). Third, there is no waiver because Developers are not prejudiced from any alleged failure to assert the defense earlier. "Raising a defense late is not prejudicial simply because it 'would have been dispositive if asserted when the action was filed.'" *Pennington* Order 7 (quoting *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019)) (internal quotation marks omitted).[6]

## VI. CONCLUSION

Tetra Tech respectfully requests that the Court dismiss these cases for lack of subject matter jurisdiction. In the alternative, if the Court decides that it has subject matter jurisdiction, Tetra Tech respectfully requests that the Court grant summary judgment in these cases in favor of Tetra Tech on each and every cause of action asserted by Five Point and Lennar.

---

[5] Here, Tetra Tech did not plead that Developers' claims "were preempted by federal statutes and regulations . . . governing exposure to hazardous substances" as it did in *Pennington*. Answer p. 46, No. 18-cv-5330, Dkt. No. 189; *see Pennington* Order 7. *But cf.* Answer, Affirmative Defenses p. 5, No. 20-cv-1481, Dkt. No. 66 (alleging that Tetra Tech's compliance with government regulations "preempts" Five Point's claims); Answer p. 43, No. 20-cv-1485, Dkt. No. 125 (same for Lennar's claims).

[6] Separately, Tetra Tech cannot have waived its defense of lack of subject matter jurisdiction under the PAA. Lack of subject matter jurisdiction cannot be waived. *See* Fed. R. Civ. P. 12(h)(3).

Dated: August 20, 2026

MAYER BROWN LLP

By: *   /s/ Davina Pujari*
Davina Pujari, SBN 183407
Christopher A. Rheinheimer, SBN 253890

*Attorneys for Defendants Tetra Tech, Inc. and Tetra Tech EC, Inc.*