DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DAVID MARROSO (S.B. #211655)
dmarroso@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

GEOFFREY H. YOST (S.B. #159687)
gyost@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984 8701

JEFFREY D. DINTZER (S.B. #139056)
jeffrey.dintzer@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, California 90071
Telephone: +1 213 576 1000
Facsimile: +1 213 576 1100

*Attorneys for Plaintiffs CPHP DEVELOPMENT, LLC; HPS DEVELOPMENT CO., LP; HPS1 BLOCK 50, LLC; HPS1 BLOCK 51, LLC; HPS1 BLOCK 53, LLC; HPS1 BLOCK 54, LLC; HPS1 BLOCK 55, LLC; HPS1 BLOCK 56/57, LLC; LENNAR CORPORATION; FIVE POINT HOLDINGS, LLC; and CP DEVELOPMENT CO., LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CPHP DEVELOPMENT, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH, INC., et al.,<br><br>Defendants. | Case No. 3:20-cv-01485-JD<br><br>**DEVELOPER PLAINTIFFS' OPPOSITION TO TETRA TECH'S "MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT"**<br><br>Date: September 24, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James A. Donato |

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC, et al.,<br>Plaintiffs,<br>v.<br>TETRA TECH, INC., et al.,<br>Defendants. | Case No. 3:20-cv-01481-JD |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 4

A. Developers Sue Tetra Tech After Learning the Scope of Tetra Tech's Fraud ..... 4

B. Lennar Developed Only Parcel A. ..... 5

C. Five Point Has Not Received a Parcel Transfer. ..... 5

D. Tetra Tech Answers Developers' Complaints Without Invoking PAA ..... 6

E. Tetra Tech Files Two Summary Judgment Motions in Developers' Cases Without Invoking PAA ..... 6

F. Tetra Tech Invokes Federal Enclave Jurisdiction in Related Cases ..... 7

G. Tetra Tech Raises the PAA in Related Cases ..... 7

H. Tetra Tech Belatedly Invokes the PAA in the Developers' Cases ..... 8

III. LEGAL STANDARD ..... 8

A. Summary Judgment Standard ..... 8

B. Price-Anderson Act Standard ..... 8

C. Standard To Dismiss For Lack of Jurisdiction ..... 9

IV. ARGUMENT ..... 9

A. Tetra Tech Waived PAA Preemption and Its Motion is Not Jurisdictional. ..... 9

1. Tetra Tech's PAA Preemption Argument Is Untimely and Waived. ..... 9

2. Tetra Tech's Summary Judgment Motion Is Untimely and Violates the Court's "One-Motion" Order. ..... 11

3. Tetra Tech's PAA Preemption Argument Is Not Jurisdictional. ..... 12

B. Developers' Claims Do Not Arise From a "Nuclear Incident" And Are Exempt from the PAA Under the "Act of War" Exception. ..... 14

1. Exposure to Radioactive Materials is Required for a Nuclear Incident, and Developers Do Not Plead Exposure to Radiation. ..... 14

2. These Cases Fit Within the PAA's "Act of War" Exception. ..... 18

C. Tetra Tech Failed to Demonstrate a Conflict with State Law ..... 19

D. Even if the PAA Applied, Tetra Tech's Motion Still Fails, as Developers' Claims Satisfy the Statute ..... 21

1. Loss of Use Is a Cognizable Injury Under the PAA that Does Not Require Physical Damage to the Property ..... 22

2. Developers Suffered Loss of Use of Property ..... 23

V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983)....................9

*Bell v. Hood*,
327 U.S. 678 (1946)....................13

*Bohrmann v. Me. Yankee Atomic Power Co.*,
926 F. Supp. 211 (D. Me. 1996)....................20

*Chalmers v. City of Los Angeles*,
762 F.2d 753 (9th Cir. 1985)....................23

*Cnty. of San Diego v. Miller*,
13 Cal. 3d 684 (1975)....................24

*Cook v. Rockwell Int'l Corp.*,
273 F. Supp. 2d 1175 (D. Colo. 2003)....................20

*Cook v. Rockwell Int'l Corp.*,
790 F.3d 1088 (10th Cir. 2015)....................9

*Corcoran v. N.Y. Power Auth.*,
935 F. Supp. 376 (S.D.N.Y. 1996)....................20

*Corley v. United States*,
556 U.S. 303 (2009)....................18, 22

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
639 F.3d 186 (5th Cir. 2011)....................15

*Cotter Corp. (N.S.L.) v. United States*,
165 Fed. Cl. 138 (2023)....................18

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
438 U.S. 59 (1978)....................21

*Dumontier v. Schlumberger Tech. Corp.*,
543 F.3d 567 (9th Cir. 2008)....................2, 14, 22

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006)....................12

*Garcia v. Salvation Army*,
918 F.3d 997 (9th Cir. 2019)....................10

*Gilchrist v. Jim Slemons Impts., Inc.*,
803 F.2d 1488 (9th Cir. 1986)....................13

*Golden v. CH2M Hill Hanford Grp., Inc.*,
528 F.3d 681 (9th Cir. 2008)....................2, 15, 17

*Good v. Fluor Daniel Corp.*,
222 F.Supp.2d 1236 (E.D.Wash.2002)....................15

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001)....................10

*Iglesias v. Welch Foods Inc.*,
No. 17-cv-00219-TEH, 2017 WL 1227393 (N.D. Cal. Apr. 4, 2017)....................10

## TABLE OF AUTHORITIES

**Page(s)**

*In re Berg Litig.*,
293 F.3d 1127 (9th Cir. 2002) ........ 13, 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
546 F.3d 981 (9th Cir. 2008) ........ 13

*In re Ethan C.*,
54 Cal. 4th 610 (2012) ........ 17

*In re Hanford Nuclear Rsrv. Litig.*,
534 F.3d 986 (9th Cir. 2008) ........ passim

*In re TMI Litig. Cases Consol. II*,
940 F.2d 832 (3d Cir. 1991) ........ 19

*Johnson v. Armored Transp. of Cal., Inc.*,
813 F.2d 1041 (9th Cir. 1987) ........ 1

*Kennedy v. S. Cal. Edison Co*.,
268 F.3d 763 (9th Cir. 2001) ........ 20

*Lawson v. Gen. Electric Co.*,
140 F. Supp. 3d 968 (N.D. Cal. 2015) ........ 14, 20

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) ........ 11

*Lynch v. United States*,
292 U.S. 571 (1934) ........ 24

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........ 8

*Matthews v. Centrus Energy Corp*.,
No. 2:20-cv-00040, 2020 WL 4284922 (S.D. Ohio Jul. 27, 2020) ........ 16

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........ 10

*Nguyen v. United Airlines, Inc.*,
No. 23-cv-03220-NW, 2025 WL 4110873 (N.D. Cal. July 18, 2025) ........ 12

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
210 F.3d 1099 (9th Cir. 2000) ........ 8

*Osarczuk v. Associated Univs., Inc.*,
36 A.D.3d 872, 830 N.Y.S.2d 711 (2007) ........ 15

*ProDox, LLC v. Pro. Document Servs., Inc.*,
Nos. 24-2409, 24-2753, 24-5646, 24-6013, 2025 WL 2364980 (9th Cir. Aug. 14, 2025) ........ 11

*Radiation Sterilizers, Inc. v. United States*,
867 F. Supp. 1465 (E.D. Wash. 1994) ........ 18, 23, 25

*Rambus Inc. v. Hynix Semiconductor Inc.*,
628 F. Supp. 2d 1114 (N.D. Cal. 2008) ........ 11

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
251 F.3d 814 (9th Cir. 2001) ........ 23

## TABLE OF AUTHORITIES

**Page(s)**

*U.S. v. Skinna*,
931 F.2d 530 (9th Cir. 1990)........................................ 9

**Statutes**

42 U.S.C. § 2014(ii)........................................ 3, 9, 23

42 U.S.C. § 2014(q)........................................ passim

42 U.S.C. § 2014(w)........................................ 2, 9, 25

42 U.S.C. § 2210(n)(2)........................................ 2, 9, 13

**Other Authorities**

*In re Tetra Tech EC, Inc.*, 81 Fed. Reg. 73144-01 (Oct. 24, 2016)........................................ 23

*Price-Anderson Act Reauthorization: Hearing Before the Subcomm. on Transp., Infrastructure & Nuclear Safety of the S. Comm. on Env't & Pub. Works*, 107th Cong. 53 (2002)........................................ 25

**Rules**

Fed. R. Civ. P. 12(h)(3)........................................ 8

Fed. R. Civ. P. 56(a)........................................ 8

Fed. R. Civ. P. 8(c)........................................ 9

**Regulations**

10 C.F.R. § 140.2(a)(1)–(4)........................................ 23

63 Fed. Reg. 23,753 (Apr. 30, 1998) (available at:
https://www.govinfo.gov/content/pkg/FR-1998-04-30/pdf/98-11520.pdf)........................................ 20

## I. INTRODUCTION

Tetra Tech's eleventh-hour gambit to avoid a San Francisco jury deciding whether the contractor perpetrated a massive environmental fraud is as obvious as it is baseless. After six years of litigation, Tetra Tech asks this Court to order judgment in its favor by invoking the Price-Anderson Act ("PAA") for the first time and arguing that Developers' claims fail because they do not allege physical injury or property damage. Tetra Tech's Motion is untimely and lacks merit.

1. Tetra Tech filed its Motion 16 months after the dispositive motion cutoff set by the scheduling order and in defiance of the Court's order limiting each side to one summary judgment motion. Tetra Tech does not mention either order, acknowledge it filed for summary judgment twice and lost, seek leave of court, or even try to establish good cause. That alone warrants denial.

2. Tetra Tech cannot avoid this procedural bar by pretending its argument is based on subject matter jurisdiction. The Court has power to adjudicate this case under federal enclave jurisdiction irrespective of the PAA. Further, Congress authorized original, concurrent jurisdiction to federal courts for cases within the ambit of the statute. Nowhere did Congress deprive federal courts of jurisdiction over such lawsuits. *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1009-1010 (9th Cir. 2008) (affirming "the district court's exercise of jurisdiction" and emphasizing that, whatever the end result on the merits, the district court "***clearly had subject matter jurisdiction*** under the PAA").[1]

3. Tetra Tech's fallback argument—even if jurisdiction exists, Developers' claims are "preempted" because Developers did not allege physical bodily injury or property damage—has been forfeited. *Johnson v. Armored Transp. of Cal., Inc.*, 813 F.2d 1041, 1044 (9th Cir. 1987) (finding choice-of-law preemption argument waived). A defendant may waive a federal preemption defense when the asserted preemption would only determine whether federal rather than state substantive law governs a claim already before the Court. *See id*. This Court addressed a similar argument in *Pennington* and determined Tetra Tech did "just enough" to avoid waiver because Tetra Tech had asserted federal statutory preemption in its answer and moved for

[1] Unless noted, all emphasis is added and all citations, quotations, and alterations are omitted.

summary judgment on that ground. Case No. 18-cv-05330 ("*Pennington*"), Dkt. 413 ("*Pennington* Order") at 7. Neither "saving" act exists here. Tetra Tech did not assert federal statutory preemption and did not argue PAA preemption in its prior summary judgment motions.

4. Forfeiture aside, Tetra Tech's Motion fails out of the gate because Developers did not plead a "nuclear incident" and the case fits within the statute's express "act of war" exception.

Tetra Tech assumes that any lawsuit referencing radiological material presents a "nuclear incident" under the PAA. Not so. There is an important ***causal*** element Tetra Tech skates over. In order to plead a "nuclear incident," a plaintiff must allege harm caused by exposure to radioactive, toxic, explosive, or other hazardous properties. 42 U.S.C. §§ 2014(q); 2014(w); 2210(n)(2). Applying that very analysis, this Court held the PAA applied to the *Pennington* plaintiffs because they alleged injuries caused by "exposure" to radiation. *Pennington* Order at 5-6. Each Ninth Circuit case cited in that Order likewise addresses injuries allegedly caused by exposure to radioactive material. *See Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 569 (9th Cir. 2008); *In re Hanford*, 534 F.3d at 995; *Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 682-83 (9th Cir. 2008).

In contrast, Developers here decidedly do ***not*** allege or seek damages caused by exposure to radiation. Rather, they seek damages caused by delay in development which in turn was caused by Tetra Tech's falsification and concealment of data, loss of confidence in Tetra Tech's work, and stigma within the community because of Tetra Tech's lies. Indeed, Tetra Tech performed no work on Parcel A of HPNS (the parcel controlled by Lennar) because it was not radiologically contaminated; and both Developers only seek damages caused by delay and reputational harm, not by exposure to radiation. *See* Case No. 20-cv-1481 ("*Five Point*"), Dkt. No. 1 ("Five Point Compl.") at ¶¶ 3-4; 7-8; 54-55; 79; 103; 111; Case No. 20-cv-1485 ("*Lennar*"), Dkt. No. 118 ("Lennar Compl.") at ¶¶ 10-13; 278; 280-282; 298; 304; 310; 332; 354; 377-378. Because delay arising from Tetra Tech's misconduct, and not exposure to hazardous properties of nuclear material, caused Developers' injuries, the PAA does not apply. *See Golden*, 528 F.3d at 684 (allowing recovery for "separately identifiable harm from a cause not related to the harmful properties" of nuclear material).

Developers' cases are not public liability actions for a separate reason. Section 2014(w) of the PAA excepts from the definition of "public liability" any claims that "arise[] out of an act of war." Here, by Tetra Tech's own admission, the radiological contamination present at Hunters Point traces back to World War II, long before Tetra Tech's fraudulent cleanup efforts. Tetra Tech asks this Court to adopt a first-of-its kind legal position that, whenever nuclear material is involved, government contractors may freely perpetrate fraud and intentional torts unless physical injury results. That is not what Congress intended and not what Price-Anderson Act provides.

5. Even if a qualifying public liability action existed (it does not), there remains the question what law applies. Tetra Tech argues that California law applies unless inconsistent with the ***PAA***. Mot. at 7. However, the statute actually says, where the PAA has been triggered, state law applies unless inconsistent with ***Section 2210*** of the PAA. *See* § 2014(ii). The distinction is crucial because anyone may invoke the jurisdictional elements of the PAA, but Section 2210 applies only to claims arising from activities performed pursuant to particular licenses from the Nuclear Regulatory Commission or indemnification agreements with the Department of Energy. Work performed by a non-qualifying licensee or indemnitee – even work associated with radioactive material – is not performed under Section 2210 and, therefore, cannot conflict with applicable state law. Tetra Tech has not identified any license or indemnity agreement that would trigger the protections of Section 2210. At a minimum, whether Tetra Tech possesses the requisite license or indemnity is a disputed factual issue and one which Developers would need and on which they have been deprived discovery. *See* Dintzer 56(d) Declaration at ¶¶ 9-11.

6. Finally, if Tetra Tech were correct that Developers must establish a qualifying PAA injury, Developers did so. Section 2014(q) recognizes "loss of use of property" separately from "loss of or damage to property." Nothing in the statute requires "physical damage" to invoke the "loss of use of property" prong, and neither of the Ninth Circuit cases cited by Tetra Tech addressed "loss of use of property." Thus, even if the PAA applies as Tetra Tech contends, Developers' claims are permitted. Tetra Tech's Motion is untimely and should be denied.

## II. STATEMENT OF FACTS

### A. Developers Sue Tetra Tech After Learning the Scope of Tetra Tech's Fraud

Generally, Developers' claims arise from Tetra Tech's pervasive and deliberate scheme to falsify environmental remediation data at HPNS that caused decades-long delays in property transfers and development. *See* Five Point Compl. at ¶¶ 1-8; Lennar Compl. at ¶¶ 1-13. Developers do not allege the misconduct led to radiation exposure. Developers assert claims under California law for (1) fraudulent deceit/intentional misrepresentation; (2) negligence; (3) negligent hiring/negligent hiring, supervision, and retention; (4) negligent interference with prospective economic advantage; (5) intentional interference with prospective economic advantage; and (6) equitable indemnification. Five Point Compl. at §§ VI-XI; Lennar Compl. at § VII. Developers cited the federal enclave doctrine as the basis for jurisdiction. Five Point Compl. at ¶ 13; Lennar Compl. at ¶ 20. Tetra Tech did not seek remand or claim PAA preemption.

Five Point alleges Tetra Tech's misconduct led to delayed development at HPNS, increased construction and other costs, and significant disruption of the overall development. Five Point Compl. at ¶ 72; *see also, e.g.*, ¶ 4 (property transfers delayed ***by fraud***), ¶ 53-55 (Tetra Tech's fraud caused a "time consuming re-evaluation" of Tetra Tech's work, causing delay that harmed Five Point), ¶ 109 (Tetra Tech interfered with economic relationships by failing to properly investigate and remediate). Five Point seeks compensatory, special, and punitive damages for the economic and reputational harm caused by Tetra Tech's misconduct. *See* Five Point Compl. at § XII; ¶¶ 53-55. Nowhere does Five Point allege Tetra Tech's misconduct led to radiation exposure or that radiation exposure caused its damages.

Similarly, Lennar alleges Tetra Tech's misconduct interrupted development at HPNS and sales of completed units, and delayed development of the surrounding community. Lennar Compl. at ¶ 278; *see also, e.g.*, ¶ 72 (Tetra Tech's misconduct threatened to delay HPNS property transfers and building out of amenities), ¶ 279 (Tetra Tech ***misrepresentations*** delayed development and increased costs), ¶ 280-284 (no radiological contamination on Lennar properties), and ¶ 352 (Tetra Tech interfered with economic relationships by "covering up, concealing, and minimizing the scope and extent of its misconduct"). Lennar also seeks

compensatory, special, and punitive damages for the economic and reputational harm caused by Tetra Tech's misconduct. Lennar Compl. at § VII; ¶¶ 277-84. None of Lennar's damages are alleged to have been caused by radiation exposure.

**B. Lennar Developed Only Parcel A.**

Lennar is the developer for Phase 1 of HPNS redevelopment, encompassing only Parcel A. Lennar Compl. at ¶¶ 32-33. The City and County of San Francisco Redevelopment Agency ("SFRA") conveyed Parcel A to Lennar in 2005 after the Navy issued a "Finding of Suitability to Transfer" ("FOST"), certifying that the land posed no threat to human health or the environment and was safe for development. *Id.* at ¶ 34; *see also* Ex. A, October 14, 2004 Final Finding of Suitability to Transfer for Parcel A (Revision 3), CPHP-0124413.[2]

Parcel A was never radiologically contaminated because the Navy historically used Parcel A for residential and administrative purposes, not radiological activities. Lennar Compl. at ¶ 11; *see also* Ex. B, November 2020 EPA Fact Sheet, "Bayview Hunters Point's Parcel A is Suitable for Residential Use," US_NAVY_02-003249222. In 1999, prior to Tetra Tech's work at HPNS, the EPA removed Parcel A from the Superfund National Priorities List, finding no further environmental remediation was needed. *See* Ex. A at CPHP-0124427. Consequently, Tetra Tech did not conduct any remediation or radiological work on Parcel A. Lennar Compl. at ¶ 11; Ex. B at -24. Both the EPA and California Department of Public Health ("CDPH") have since confirmed Parcel A is "suitable for residential use" and poses "no radiological health and safety hazards." *See* Ex. B at -22; Ex. C, February 5, 2019 California Department of Public Health, Parcel A-1, Health and Safety Survey, US_NAVY_02-002626683 at -711; Ex. D, April 24, 2019 California Department of Public Health, Parcel A-2, Health and Safety Survey, TT_03951556 at -581. Lennar broke ground on the first new homes on Parcel A in 2013. Lennar Compl. at ¶ 35.

**C. Five Point Has Not Received a Parcel Transfer.**

Five Point acquired property rights in Phase 2 of the San Francisco redevelopment, encompassing Candlestick Point and all parcels of HPNS other than Parcel A, which it was to receive from the City through phased transfers of land. Five Point Compl. at ¶¶ 21-22. Under the

[2] All exhibit references are to the exhibits attached to the Declaration of Jeffrey Dintzer.

governing Disposition and Development Agreement for Phase 2, Five Point is entitled to both acquire and develop the HPNS land. Ex. E, Disposition and Development Agreement (Candlestick Point and Phase 2 of the Hunters Point Shipyard) ("DDA"), FP_0013099 at -119; -121; -122; -150 ("[T]he Agency shall convey portions of the Project Site owned or acquired by the Agency as provided in this DDA to Developer, and such portions, together with any additional property acquired by Developer in the Project Site, shall be developed by Developer in phases under this DDA."). When Five Point acquired its interest, the bulk of the property was scheduled to be transferred by 2019, with the final transfer in 2021. Five Point Compl. at ¶¶ 2; 54.

Before property can be transferred for redevelopment, the Navy must certify via a FOST that, after sufficient environmental investigation, a parcel is "suitable for transfer." *Id.* at ¶ 19. Tetra Tech's fraud predictably resulted in delays issuing FOSTs, and in turn, to delayed development and sales. The Navy's latest estimates peg the late 2030s as the time for final FOST and transfer. *See* Ex. F, Final 2026 Federal Facilities Agreement Schedule, Hunters Point Naval Shipyard (April 2026). Five Point's substantial property interests have been delayed and harmed.

### D. Tetra Tech Answers Developers' Complaints Without Invoking PAA

In 2021, Tetra Tech answered Developers' complaints. *Five Point*, Dkt. 66; *Lennar*, Dkt. 125. Tetra Tech did not plead or invoke the PAA or statutory preemption in either answer.

### E. Tetra Tech Files Two Summary Judgment Motions in Developers' Cases Without Invoking PAA

Tetra Tech has moved for summary judgment against Developers on two separate occasions without invoking the PAA. In February 2024, Tetra Tech filed a summary judgment motion arguing Developers' claims were time-barred. *Five Point*, Dkt. 154; *Lennar*, Dkt. 221. The Court administratively terminated the motion and stated "the Court typically does not accept more than one Rule 56 motion from any party or party group." *Five Point*, Dkt. 156; *Lennar*, Dkt. 223. The Court then expressly limited each "side" to "one summary judgment motion," and reiterated this limit at a status conference: "[O]ne per side per case. That's it." *Five Point*, Dkt. 170, 179 at 8; *Lennar*, Dkt. 233 (emphasis in original). The Court then set ***April 10, 2025*** as the

dispositive-motion deadline. *Five Point*, Dkt. 170; *Lennar*, Dkt. 233.

In March 2025, Tetra Tech filed another summary judgment motion, again not mentioning the PAA, instead raising arguments under California law relating to statute of limitations, nonviable damages, and the economic loss rule. *Five Point*, Dkt. 252; *Lennar*, Dkt. 299. Tetra Tech also filed separate "supplemental" briefs arguing Developers could not prove reliance or intentional interference and that the economic-loss rule barred their negligence claims. *Five Point*, Dkt. 252-1; *Lennar*, Dkt. 299-1. Tetra Tech did not invoke the PAA in this motion either. Developers opposed, and the Court denied Tetra Tech's motion on July 10, 2025. *Five Point*, Dkt. 313; *Lennar*, Dkt. 368.

**F. Tetra Tech Invokes Federal Enclave Jurisdiction in Related Cases**

On April 27, 2020, this Court related the Developers' cases to two other cases relating to Tetra Tech's fraud at Hunters Point: (1) *Bayview Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.* ("*Bayview*"), in which plaintiffs there claimed exposure to radioactive and toxic substances causing personal injury, increased cancer risk, and property damage; and (2) *Linda Parker Pennington, et al. v. Tetra Tech, Inc., et al.* ("*Pennington*"), in which plaintiffs claimed that exposure to radiation caused them physical and property damage. Tetra Tech removed those cases to federal court, invoking the federal enclave doctrine as the basis for the Court's subject matter jurisdiction. *Pennington*, Dkt. 1 at ¶ 7; *Bayview*, Dkt. 1 at ¶ 7 (same).[3]

**G. Tetra Tech Raises the PAA in Related Cases**

In September 2025, Tetra Tech moved for summary judgment in the *Pennington* case on PAA grounds. *Pennington*, Dkt. 396. In *Pennington*, the Court granted summary judgment to Tetra Tech, finding the *Pennington* plaintiffs "do not meaningfully disagree that their claims against Tetra Tech constitute a 'nuclear incident' within the purview of the PAA" and "plaintiffs forthrightly agreed that, even if they had pleaded a 'nuclear incident,' defendants were probably right that plaintiffs have not presented evidence sufficient to meet the standards of a 'nuclear incident' to state a public liability action, and so there is no public liability action under the PAA." *Pennington* Order at 5-6. Further, the Court found Tetra Tech "barely" did enough to

[3] Tetra Tech recently settled with the Bayview plaintiffs.

avoid waiving the ability to raise PAA as a defense because Tetra Tech "raised preemption as an affirmative defense [in its answer] by referring to 'federal statutes and regulations, including those governing exposure to hazardous substances.'" *Id.* at 7.

### H. Tetra Tech Belatedly Invokes the PAA in the Developers' Cases

More than ***sixteen months*** after the dispositive motion deadline expired in the Developers' cases, Tetra Tech filed this Motion on August 20, 2026—its ***third*** motion for summary judgment—without seeking leave of court, without moving to modify the scheduling order, and without showing good cause. *Five Point*, Dkt. 368; *Lennar*, Dkt. 418. Prior to this Motion, Tetra Tech had never raised the PAA in Developers' cases.

## III. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Tetra Tech, as the "moving party without the ultimate burden of persuasion at trial," still bears at all times "the ultimate burden of persuasion on [its] motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

### B. Price-Anderson Act Standard

> "With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy." 42 U.S.C. § 2210(n)(2).

PAA defines "public liability" as "any legal liability arising out of or resulting from a nuclear incident," *id.* § 2014(w), and "any suit asserting public liability" to be a "public liability action," *id.* § 2014(ii). A "nuclear incident" is an "occurrence . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." § 2014(q). For public liability actions, "the substantive

rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of" Section 2210. *Id.* "The burden of asserting and supporting a defense of preemption" rests on the party asserting it. *U.S. v. Skinna*, 931 F.2d 530, 533 (9th Cir. 1990).

### C. Standard To Dismiss For Lack of Jurisdiction

Federal Rule of Civil Procedure 12(h)(3) requires dismissal if the Court "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Tetra Tech's motion does not implicate the Court's subject-matter jurisdiction, so this Rule does not apply. *See infra* at § IV(A)(3). Moreover, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

## IV. ARGUMENT

### A. Tetra Tech Waived PAA Preemption and Its Motion is Not Jurisdictional.

Tetra Tech's summary judgment motion is more than a year too late, and it has waived any claim of preemption under this Court's *Pennington* decision and other established precedent. Tetra Tech attempts to avoid these obstacles by mistakenly arguing PAA preemption deprives this Court of subject matter jurisdiction. Tetra Tech's assertions are wrong: the PAA ***confers*** jurisdiction, and this Court already has subject-matter jurisdiction under the federal enclave doctrine. Thus, all Tetra Tech has filed is a tardy motion for summary judgment based on an inapplicable defense that it waived long ago.

#### 1. Tetra Tech's PAA Preemption Argument Is Untimely and Waived.

Tetra Tech's preemption argument has been waived because it was not timely presented. Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." As with other similar arguments, PAA preemption is waived if not asserted. *See Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1092-93 (10th Cir. 2015) (recognizing forfeiture of PAA defense when not timely raised). By failing to

raise this affirmative defense in its answers and elsewhere, Tetra Tech has waived the defense.

In *Pennington*, the Court concluded PAA preemption was not waived because (i) federal statutory preemption was pleaded in the answer as an affirmative defense, and (ii) PAA preemption was raised in a timely-filed summary judgment motion. *Pennington* Order at 7. Neither occurred here. In its answers to Developers' complaints, Tetra Tech did not plead federal statutory preemption or any other defense remotely related to the PAA in its answers to Developers' complaints. Instead, Tetra Tech contends it preserved a PAA preemption defense by pleading "failure to state a claim." But that argument is unavailing. "[S]imply stating that the plaintiff failed to state a claim is insufficient to provide notice of a specific affirmative defense." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019).

This was not a one-time errant failure. Tetra Tech did not move to dismiss under 12(h)(3) or raise PAA at any time, discovery, or motion. Most pertinent, Tetra Tech neglected to raise PAA preemption in either of its prior summary judgment motions in the Developers' cases. Indeed, Tetra Tech's second summary judgment papers did more than omit the PAA: it *affirmatively sought judgment under California law*. *See Five Point*, Dkt. 252 at 10-13; *Five Point*, Dkt. 252-1 at 2-5; *Lennar*, Dkt. 299 at 10-12; *Lennar*, Dkt. 299-1 at 3-4. Those arguments and the resulting motion practice would have been unnecessary if the Court lacked subject-matter jurisdiction or if PAA preemption independently entitled Tetra Tech to judgment. Having invoked California law as a basis for judgment and having required Developers to litigate and respond to those merits arguments, Tetra Tech is estopped from reversing course in a manner that prejudices Developers. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001), (*quoting New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001)) (identifying as relevant whether the positions are "clearly inconsistent," whether the earlier position was judicially accepted, and whether the later position would create an unfair advantage or detriment); *see also Iglesias v. Welch Foods Inc.*, No. 17-cv-00219-TEH, 2017 WL 1227393, at *3 (N.D. Cal. Apr. 4, 2017) (applying judicial estoppel to inconsistent legal positions bearing on federal jurisdiction where the earlier position had been accepted and the later position would permit dismissal rather than merits litigation). Tetra Tech filed PAA-based motions in *Bayview* and *Pennington* in

September 2025 but waited until August 2026—after obtaining a favorable ruling in *Pennington*—before raising the issue here.

Tetra Tech's late-stage invocation of an unpleaded PAA defense (that it failed to raise ***twice*** at summary judgment) has substantially prejudiced Plaintiffs. Tetra Tech has litigated this case for six years without any notice to Developers that it would invoke the PAA. Discovery has been closed since the beginning of 2024 and the dispositive-motion deadline has long passed. The Ninth Circuit recognizes that the loss of an opportunity to develop the factual record constitutes prejudice. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (explaining that "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice"); *see also ProDox, LLC v. Pro. Document Servs., Inc.*, Nos. 24-2409, 24-2753, 24-5646, 24-6013, 2025 WL 2364980, at *1 (9th Cir. Aug. 14, 2025) (affirming waiver where defendant raised defense after discovery closed).

The PAA implicates distinct, fact-intensive issues that would have materially shaped discovery. Had Tetra Tech timely raised this defense, for example, Developers could have moved to dismiss it long ago since they do not allege a nuclear incident or amended the complaint to make even more clear their claims do not arise from a nuclear incident. In the event the Court concluded they did allege a nuclear incident, Developers could have conducted discovery on which radionuclides qualify as statutory source, special nuclear, or byproduct material; which federal safety standards apply and their applicability under the PAA; whether Tetra Tech holds a qualifying NRC license; whether Tetra Tech has a qualifying indemnity agreement with the NRC; ownership and property interests of Developers; whether the hazardous characteristics of covered material caused Developers' to suffer property damage and loss of use of property; and what expert opinions are necessary on each issue. Developers were denied all of this discovery. *See* Dintzer 56(d) Declaration at ¶¶ 9-11.

**2. Tetra Tech's Summary Judgment Motion Is Untimely and Violates the Court's "One-Motion" Order.**

The Motion should be denied because it is untimely. *Rambus Inc. v. Hynix Semiconductor Inc.*, 628 F. Supp. 2d 1114, 1121 (N.D. Cal. 2008) (granting motion to strike untimely successive

summary judgment motion, as defendant's "failure to make their arguments … in a diligent and timely manner dooms their implied effort to seek relief from the case management order's deadline"). The Court set April 10, 2025 as the summary judgment deadline for all parties. *Five Point*, Dkt. 170; *Lennar*, Dkt. 233. Tetra Tech missed that deadline by sixteen months, and the Court should deny the Motion on that basis alone.

Further, Tetra Tech filed another motion for summary judgment in defiance of the Court's direction to file no more than "one." *Five Point*, Dkt. 170; *Lennar*, Dkt. 233. Tetra Tech did not seek leave to file this successive motion; it did not acknowledge the Court's one-motion limitation; and it did not attempt to show good cause for its failure to raise its PAA argument twice before. This, too, is an independent ground to deny the Motion. *See Nguyen v. United Airlines, Inc.*, No. 23-cv-03220-NW, 2025 WL 4110873, at *1 (N.D. Cal. July 18, 2025).

3. **Tetra Tech's PAA Preemption Argument Is Not Jurisdictional.**

To circumvent the Court's orders, Tetra Tech argues now, for the first time, that the PAA deprives the Court of subject matter jurisdiction (an issue the Court can resolve at any time). Tetra Tech is wrong because the PAA *confers* jurisdiction on the Court, it does not restrict it; and the Court has separate and independent jurisdiction under the enclave doctrine. We address later the merits of Tetra Tech's "preemption" argument, but the issue is not subject matter jurisdiction.

Without regard to the PAA, the Court independently has subject matter jurisdiction under the federal enclave doctrine as Developers' claims arise from conduct that occurred on a federal enclave. *See* Five Point Compl. at ¶ 13; Lennar Compl. at ¶ 20; *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"). Tetra Tech agrees—in fact, it removed the Bayview and Pennington cases to this Court on enclave, not PAA. *See supra* at § II(F).

Tetra Tech argues, without citation, that because Plaintiffs' "claims conflict with the PAA, the claims are jurisdictionally barred, leaving no viable cause of action over which the Court could exercise either federal enclave jurisdiction or any alternative basis for federal jurisdiction." Mot. at 12. This is double-talk. Whether the Developers have a viable cause of

action—including because of PAA preemption—is a merits question, not a jurisdictional one. *See Gilchrist v. Jim Slemons Imps., Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) ("the existence of a federal preemption *defense* does not generally affect jurisdiction"). However the Court decides that question, it has federal enclave jurisdiction to adjudicate it. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) (federal "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover").

Focusing on the language of the PAA, the statute *grants* federal courts original jurisdiction over "any" "public liability action" arising from a "nuclear incident." 42 U.S.C. § 2210(n)(2) (granting federal courts "original jurisdiction without regard to the citizenship of any party or the amount in controversy" over "any public liability action arising out of or resulting from a nuclear incident."). Tetra Tech asserts just the opposite: that the PAA *deprives* federal courts of subject matter jurisdiction over public liability actions.

Tetra Tech tries to avoid the language of the statute by citing *In re Berg Litig.*, 293 F.3d 1127 (9th Cir. 2002), which stated, "[p]hysical harm to persons or property is … a jurisdictional prerequisite" under the PAA, *id.* at 1131. Mot. 7-8. But in *In re Hanford*, the Ninth Circuit explained that "[a]lthough in *Berg* we referred to bodily injury as a jurisdictional prerequisite, we used the term 'jurisdictional' in the loose sense, perhaps too loose, to mean that medical monitoring claims were not compensable under the PAA absent physical injury." 534 F.3d at 1009. Despite the plaintiff's failure to plead bodily harm, the "district court … ***clearly had subject matter jurisdiction*** under the PAA to decide the issue; the district court simply did not have the power to grant the relief requested because the plaintiffs have not suffered any physical injury." *Id.* *Hanford* forecloses the argument that a failure to plead harm to property deprives this Court of jurisdiction. Tetra Tech briefly acknowledges *Hanford* in a footnote, Mot. 7 n.3, but its only response is to cite dicta from an antitrust case. *See id.* (citing *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984, 985 n.3, 991 (9th Cir. 2008)).[4]

[4] Tetra Tech's jurisdictional argument would also lead to an absurd result Congress could not possibly have intended. If federal courts lacked subject matter jurisdiction over "public liability actions" preempted by the PAA, then a defendant could *not* remove a state court public liability action to federal court because the federal court would lack jurisdiction. Taking Tetra Tech's

Because Tetra Tech's arguments are plainly not jurisdictional, the Motion's untimeliness cannot be excused, and it must be denied.

### B. Developers' Claims Do Not Arise From a "Nuclear Incident" And Are Exempt from the PAA Under the "Act of War" Exception.

#### 1. Exposure to Radioactive Materials is Required for a Nuclear Incident, and Developers Do Not Plead Exposure to Radiation.

The PAA defines a "nuclear incident" as "any occurrence . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." § 2014(q). The statutory definition requires more than the mere ***presence*** of radioactive material—it requires that the alleged injury "aris[e] out of or result[] from" the hazardous properties of that material. *Id.*; *see also Dumontier*, 543 F.3d at 571 ("Plaintiffs claim compensation for exposure to radioactive material, so they can only recover if they meet the requirements of the Act."); *Lawson v. Gen. Electric Co.*, 140 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (recognizing that the PAA does not "preempt every claim related to nuclear power"). Developers do not allege exposure to the hazardous properties of nuclear material caused them injury. Instead, Developers' claims arise from Tetra Tech's fraudulent and negligent ***conduct***, which resulted in the disruption of their development of HPNS, delay in the transfer of property, and the consequent losses to Developers' property and businesses.

Under Ninth Circuit precedent, "exposure" is an essential component of a nuclear incident for purposes of the PAA. *See Dumontier*, 543 F.3d at 569 ("Exposure to radioactive materials is compensable only if it causes one of the harms on this list."). Each of the Ninth Circuit cases applying the PAA which the Court cited in the *Pennington* Order involved claims arising from direct exposure to radioactive material. *See id.* (applying PAA where employees "carelessly left some cesium-137 on a drilling rig" and "[p]laintiffs later worked on the rig and were exposed");

---

argument to its absurd conclusion, Congress would have created a regime that vested in federal courts jurisdiction over (and allowed removal of) public liability actions that may brought under state law, *see* § 2014(ii), but *deprived* federal courts of jurisdiction over (and *precluded* removal of) public liability actions that so interfere with federal interests that Congress resolved to preempt them. Such actions could be filed in state court and never be removed to federal court.

*In re Hanford*, 534 F.3d at 995 (litigation by "two thousand residents who now claim that [radioiodine] emissions… caused various cancers and other life-threatening diseases"); *Golden*, 528 F.3d at 682-83 (PAA suit by worker exposed to "up to four gallons of [radioactive] toxic liquid splashed on him . . . claiming that the accident caused him physical injuries ranging from colitis to sinusitis, as well as emotional distress"); *see also Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 193 (5th Cir. 2011) (analyzing at length whether direct workplace radiation exposure caused plaintiffs' claimed injuries).

The Ninth Circuit case *Golden v. CH2M Hill Hanford Grp., Inc.* is instructive. In *Golden*, a worker at Hanford Nuclear Reservation was "splashed" with "four gallons of [radioactive and nonradioactive] toxic liquid." 528 F.3d at 682. He sued his employer and appealed after the district court granted the employer summary judgment. *Id.* at 683. The Ninth Circuit affirmed on causation grounds, but recognized that the "accident wasn't just a 'nuclear incident;' the liquid that splashed onto [the worker] also contained nonradioactive heavy metals." *Id.* at 684. Therefore, "[i]nsofar as [the worker] suffered separately identifiable harm from a cause not related to the harmful properties of the radioactive materials, his claim for such damages would not be preempted by the Price–Anderson Act." *Id.* The Ninth Circuit concluded that:

> ***[I]t is possible that Golden suffered emotional distress from exposure to the nonradioactive materials that is separate and distinct from his emotional distress claim for exposure to the radioactive materials. If so, the former would not be preempted by the Price–Anderson Act, even though Golden can't show that he suffered physical injuries as a result of this exposure***. *See Osarczuk v. Associated Univs., Inc.*, 36 A.D.3d 872, 830 N.Y.S.2d 711, 715 (2007) ("[T]o the extent that [plaintiffs' claims] are premised on exposure to non-nuclear chemicals and substances that are nonetheless toxic and hazardous, the defendant is not entitled to summary judgment ...."); *cf. Good v. Fluor Daniel Corp.*, 222 F.Supp.2d 1236, 1249 (E.D.Wash.2002) (bodily injury from "non-radioactive, or toxic chemicals" does not fall under the Price–Anderson Act).

*Golden*, 528 F.3d at 684. Despite citing *Golden*, Mot. at 6, Tetra Tech ignores its key insight: "[i]nsofar as [the Developers] suffered separately identifiable harm from a cause not related to the harmful properties of the radioactive materials" such as Tetra Tech's fraud, their "claim[s] for such damages would not be preempted by the Price–Anderson Act." *Id.* at 684.

Tetra Tech misreads *Matthews v. Centrus Energy Corp.*, as standing for the proposition

that all economic injury claims are barred by the PAA. *Matthews* does not stand for such a sweeping rule. Rather, the court adhered to the general principle that, in order for the PAA to apply at all, the alleged harms must be caused by exposure to radiation. "Plaintiffs' claims [were] based on bodily injuries and property losses they allegedly suffered due to ***exposure*** to radioactive waste emanating from the Plant." No. 2:20-cv-00040, 2020 WL 4284922, at *3 (S.D. Ohio Jul. 27, 2020). In contrast, Developers here do not allege harm caused by any exposure to radioactive waste.

Unlike *Pennington* and cases applying the PAA, Developers' claims do not "arise out of or result from" radioactive material. § 2014(q). Developers' complaints focus solely on Tetra Tech's fraud, coverup, and the impact of that ***misconduct*** on Developers' business and property.

Five Point's complaint does not allege exposure to radiation (which Tetra Tech itself has acknowledged). *Five Point*, Dkt. 252-1 at 4 (Tetra Tech arguing that Five Point "seeks purely economic damages."). The claims are predominated by Five Point's lost use of property "[b]ecause of the fraud perpetrated by Tetra Tech" and because "the United States is unable to certify the Shipyard property for transfer to Plaintiffs." Five Point Compl. at ¶ 8; *see also* ¶¶ 3-4, 53-55; Ex. G, June 13, 2024 Deposition of Suheil Totah ("Totah Tr.") at 28:15-17; 59:5-8 (Five Point has "not received one square foot of land at the shipyard"); Ex. H, December 9, 2024 Deposition of Five Point's 30(b)(6) Witnesses, Emile Haddad and Suheil Totah ("Five Point 30(b)(6) Tr.") at 47:8-13; (Five Point had to "abandon that plan" and "spen[d] capital on redesigning…replanning and rethinking" business plans due to fraud).

Lennar alleges the ***opposite*** of ongoing exposure: "[F]urther testing and scientific evidence confirms there is no safety risk to homeowners or contractors at Parcel A," and Tetra Tech did not perform any work on Parcel A because Parcel A was not used "for activities that would have resulted in radiological contamination." Lennar Compl. at ¶¶ 11–12; Ex. B, US_NAVY_02-003249222 at -24; Ex. A, CPHP-0124427. These contentions have been confirmed by the EPA and Cal. Dept. of Public Health. Ex. B, US_NAVY_02-003249222; Ex. C, February 5, 2019 California Department of Public Health, Parcel A-1, Health and Safety Survey, US_NAVY_02-002626683 at -711; Ex D TT_03951556 at -581. Lennar therefore *disclaimed* the

presence of radioactive material at Parcel A, and its losses necessarily could not arise from exposures to which the PAA would apply. As no such properties were present on the land Lennar developed, its harm arises solely from "the stigma and uncertainty now attached to the Shipyard" as a whole resulting from Tetra Tech's fraudulent conduct. *Id.* at ¶ 13.

Even if radiological contamination were a but-for antecedent to this dispute, Tetra Tech's alleged intentional misconduct independently broke the causal chain required by § 2014(q). Causation under the PAA is governed by applicable state law. *See In re Hanford*, 534 F.3d at 1010 ("Under the PAA, Washington state law controls the standard of causation."). California recognizes a superseding cause where "an independent event [that] intervenes in the chain of causation" produces injury outside the risk created by the antecedent condition. *In re Ethan C.*, 54 Cal. 4th 610, 641 (2012). Here, radioactive material may explain why remediation occurred in the first place, but the preexisting radioactivity at the site did not cause Developers' damages. The delay and harm to Developers resulted because Tetra Tech falsified remediation data, concealed that misconduct, destroyed confidence in its work, triggered regulatory reevaluation, and delayed property transfers. In the Ninth Circuit's words, Developers suffered "separately identifiable harm from a cause not related to the harmful properties of the radioactive materials." *Golden*, 528 F.3d at 684. Tetra Tech's sweeping assertion that contractors who are paid hundreds of millions of dollars to remediate radiation are immune from all state-law suits unless the plaintiff experienced bodily or physical injury misreads the statute, misapplies Ninth Circuit law, and would usher in a new regime inconsistent with congressional intent, common sense, and notions of fairness.

This contrasts sharply with *Pennington*, where the Court found the "core of plaintiffs' case is harm said to have arisen" from exposure to radiation, and plaintiffs "d[id] not meaningfully disagree that their claims against Tetra Tech constitute a 'nuclear incident' within the purview of the PAA." *Pennington* Order at 5-6. Indeed, the *Pennington* plaintiffs "took no issue whatsoever" with Tetra Tech's characterization of their claims as seeking compensation for exposure to radioactive material. *Id.* at 6. Developers, in contrast, strongly dispute that their claims arise from a "nuclear incident."

Developers' complaints' references to the cleanup of radioactive material are merely factual context for their primary dispute with Tetra Tech. The PAA's statutory definition, meanwhile, requires an "occurrence" causing one of the enumerated injuries "***arising out of or resulting from*** the radioactive, toxic, explosive, or other hazardous properties" of source, special nuclear, or byproduct material. § 2014(q). If Congress intended the PAA to apply to every suit that in any way mentioned radioactive materials, the words "arising out of or resulting from" would be entirely superfluous, as would the specification of special nuclear, or byproduct material. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining the "basic interpretive canon[]" that statutes should be construed so that no word or clause is rendered superfluous). Developers' actions are no more PAA public liability actions than would be a breach of contract action based on a contract to supply radioactive material, a construction defect action arising from faulty design of a nuclear facility's cooling towers, or a patent infringement action based on a patent for nuclear safety software systems, where none of those actions allege exposure to radiation. *See Radiation Sterilizers, Inc. v. United States*, 867 F. Supp. 1465, 1468-69 (E.D. Wash. 1994) (no public liability action alleged by one plaintiff where the defective cesium capsules it received from defendant did not leak or result in any exposure, such that the plaintiff's product liability claims were not subject to the PAA).

### 2. These Cases Fit Within the PAA's "Act of War" Exception.

To the extent the mere *presence* of radiological contamination at Hunters Point Shipyard is the catalyst for finding a "nuclear incident," despite the fact that neither Developer alleges exposure to radiation being the cause of any harm, this case <u>still</u> is not a "public liability action" under the statute. The statute expressly excepts from the term "public liability" any "claims arising out of an act of war." *See* 42 U.S.C. § 2014(w) ("[t]he term 'public liability' means any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation ... *except: (ii) claims arising out of an act of war*"); *see also Cotter Corp. (N.S.L.) v. United States*, 165 Fed. Cl. 138, 142–43 (2023), *rev'd and remanded sub nom. Cotter Corp., N.S.L. v. United States*, 127 F.4th 1353 (Fed. Cir. 2025) ("Under the PAA today, 'public liability' refers to liability resulting from any 'nuclear incident' or precautionary evacuation, *except for* workmen's

compensation claims or *claims resulting from war*."). Just as workmen's compensation claims fall outside of the PAA and thus can proceed under state law, so too can claims that fall within the war exclusion. Judge Scirica framed the PAA analysis this way:

> At the outset of every case brought under § 2210(n)(2), a court must decide whether a "nuclear incident" has occurred. *See* 42 U.S.C. § 2014(w), § 2014(q) (1988). ***The court must also determine whether the plaintiff's claim does not fall within the definition of "public liability" because it*** is a workmen's compensation claim, ***arises out of an act of war***, or is an exempted property damage claim. *Id.* § 2014(w). Finally, the court is directed to apply the law of a particular state. *Id.* § 2014(hh).

*In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 863 (3d Cir. 1991) (Scirica, concurring).

Here, even if a "nuclear incident" occurred and served as the cause of Developers' damage (it did not), the Court must then determine if Developers' claims are excepted from the definition of "public liability" because it "arises out of an act of war." It does – or, at absolute minimum, there is a dispute of fact about that issue which requires denying the motion.

The decades-old radiological contamination at Hunters Point Shipyard traces back to World War II, as Tetra Tech acknowledges and admits. Indeed, the Navy's Historical Radiological Assessment identifies the July 1945 *USS Indianapolis* operation as "[a] unique WW II support function of HPS." Hunters Point loaded components of Little Boy, including the uranium-235 projectile, aboard Indianapolis, which departed on July 16 for Tinian as part of the operational delivery chain for the atomic bomb subsequently used against Japan while the United States was actively at war. Ex. I, NAVSEA Final Historical Radiological Assessment, Hunters Point Shipyard, at #16077.148. Had Tetra Tech raised PAA in a timely manner, Developers would have sought discovery about the war-related source of the historical radiological contamination to establish the "act of war" exception in the statute. Because Developers' claims do not arise from a "nuclear incident" under the PAA, PAA's preemption provision is not triggered, and this Court should deny the Motion.[5]

### C. <u>Tetra Tech Failed to Demonstrate a Conflict with State Law</u>

While the Court need not decide this issue to rule in Developers' favor, Tetra Tech cannot

---

[5] The court did not have the opportunity to address 2014(w) or the "act of war" exception in *Pennington* because the parties did not raise or brief the issue.

identify a conflict between Section 2210 and the Developers' state law claims. As this Court recognized in *Lawson*—a case Tetra Tech cites—"Price-Anderson does not categorically preempt all claims in the field of nuclear safety; it ***merely preempts those that are inconsistent***." 140 F. Supp. 3d at 973 (recognizing that "Price-Anderson Is Not a Complete Preemption Statute").[6]

Congress enacted the PAA "to protect the public and to encourage the development of the atomic energy industry," by, among other things, "providing certain licensees with…private insurance, government indemnification, and limited liability for…nuclear tort claims." *Kennedy v. S. Cal. Edison Co*., 268 F.3d 763, 767 (9th Cir. 2001). Congress provided that "the substantive rules for decision" in a public liability action "shall be derived from the law of the State in which the nuclear incident involved occurs, ***unless such law is inconsistent with the provisions of***" Section 2210; § 2014(ii).[7] State law is thus the default substantive law; federal displacement occurs only upon a showing of inconsistency. Inconsistency with what, though?

Tetra Tech asserts that state law applies unless inconsistent with Section 2014(q). Mot. at 7. That is plainly wrong. State law applies unless inconsistent with Section 2210. The distinction is critical because that Section (as opposed to others) applies only to entities whose nuclear-related work occurred pursuant to certain licenses from the Nuclear Regulatory Commission or an agreement of indemnification with the Department of Energy. Any work performed by a non-qualifying licensee or indemnitee is not done pursuant to Section 2210 and, therefore, cannot conflict with state law claims. *See, e.g.*, *Price-Anderson Act Reauthorization: Hearing Before the Subcomm. on Transp., Infrastructure & Nuclear Safety of the S. Comm. on*

---

[6] As *Lawson* recognized, numerous courts have reached the same conclusion—state-law fraud, intentional tort, and negligence claims are not categorically displaced by the PAA. *See id.* (citing *Corcoran v. N.Y. Power Auth*., 935 F. Supp. 376 (S.D.N.Y. 1996) (state law claim for fraudulent concealment not inconsistent with Price-Anderson); *Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175 (D. Colo. 2003) (landowners' trespass and nuisance claims not preempted by Price-Anderson); *Bohrmann v. Me. Yankee Atomic Power Co.*, 926 F. Supp. 211 (D. Me. 1996) (fraud, IIED and battery claims not preempted because federal safety standards had no bearing on defendant's liability for intentional acts).

[7] In full, Section 2014(ii) reads: "The term 'public liability action', ***as used in section 2210 of this title***, means any suit asserting public liability. A public liability action shall be deemed to be an action arising ***under section 2210*** of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, ***unless such law is inconsistent with the provisions of such section***."

*Env't & Pub. Works*, 107th Cong. 53 (2002) (explaining that "Price-Anderson clearly does not cover the [defendant] because no such indemnification agreement exists with the [defendant]").

In its Motion, Tetra Tech has not alleged it has an applicable license within the purview of Section 2210 or an applicable indemnification agreement. At best, the Court is left with a factual question of whether Tetra Tech has such license or indemnification protection, which is a material fact inappropriate for summary judgment. *See* Dintzer 56(d) Decl at ¶¶ 20-24.[8] Because Tetra Tech's HPNS activity was not covered by § 2210, Tetra Tech cannot identify a § 2210 provision with which Developers' state-law claims conflict. That construction accords with the Supreme Court's description of the PAA as a "reasonably just substitute for the common-law or state tort law remedies it replaces." *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 88 (1978).

The *Pennington* parties did not clearly raise this issue to the Court. In their opposition, the *Pennington* plaintiffs peripherally raised licensing in arguing Tetra Tech's late introduction of the PAA prejudices them. *See Pennington*, Dkt. 405 at 25. In reply, Tetra Tech waved this argument aside, calling the *Pennington* plaintiffs' "opaque illusion" to licensure "irrelevant" and denying "any requirement that the Tetra Tech Defendants have certain licensure for PAA preemption to apply." *Pennington*, Dkt. 408 at 6. Because Tetra Tech has failed to identify any inconsistency between Developers' claims and Section 2210, its preemption argument also fails, yet another reason why the Court should deny the Motion.

### D. <u>Even if the PAA Applied, Tetra Tech's Motion Still Fails, as Developers' Claims Satisfy the Statute</u>

Even if the Developers' claims arose from a "nuclear incident," and even if Tetra Tech was correct that Developers' must plead a qualifying injury under the PAA, its Motion still fails, because Developers do satisfy the PAA's "loss of use of property" requirement. § 2014(q).

---

[8] The NRC identifies Tetra Tech EC as the holder of "service provider License No. 29-31396-01" issued under Parts 30, 40, and 70. *In re Tetra Tech EC, Inc.*, 81 Fed. Reg. 73144-01, (Oct. 24, 2016). Thus, because Tetra Tech's service-provider license does not authorize plutonium processing, fuel fabrication, or construction and operation of a uranium-enrichment facility, Tetra Tech's license does not appear to qualify for substantive preemption under Section 2210.

1. **Loss of Use Is a Cognizable Injury Under the PAA that Does Not Require Physical Damage to the Property**

Tetra Tech argues Developers' claims fail because they do not allege "bodily harm" and did not allege "physical injury" to substantiate "damage to property." However, Developers separately allege "loss of use of property," which is cognizable without regard for physical injury.

Section 2014(q) separately lists "loss of or damage to property" *or* "loss of use of property" as independent categories of cognizable injury. Tetra Tech's interpretation disregards Section 2014(q)'s disjunctive use, rendering the phrase "loss of use of property" superfluous. If a claimant may invoke "loss of use of property" only after proving that the property was physically damaged, then every qualifying loss-of-use claim is also a qualifying damage-to-property claim, and Section 2014(q)'s allowance for loss of property use is meaningless. Courts have long recognized Congress does not legislate that way. *See Corley*, 556 U.S. at 314 (explaining that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Tetra Tech layers onto the statutory language the requirement that there must be "physical" damage related to Developers' "loss of use of property" by citing *Dumontier* and *In re Berg*. Neither case addresses "loss of use of property"; both speak to scope of "bodily injury," which is not at issue here. *See Dumontier*, 543 F.3d at 570 (rejecting argument "that exposure to radiation surely causes bodily injury if it exceeds the federal dose limit for members of the public"); *In re Berg Litig*., 293 F.3d at 1131 (finding that emotional distress was not a "bodily injury" covered by the PAA). Neither of these cases stands for the proposition that "[l]ost profits and diminished property values, without more, are not compensable physical injuries under the PAA." Mot. at 10. Neither case addresses whether any economic losses are covered injuries under the PAA, and again, neither case addresses loss of property use at all. In fact, according to the Department of Energy's Office of Civilian Radioactive Waste Management, the PAA "provides very broad financial protection to compensate for damage and injury, ***including loss of profits caused by a nuclear incident***." 63 Fed. Reg. 23,753, 23,759 (Apr. 30, 1998) (available at: https://www.govinfo.gov/content/pkg/FR-1998-04-30/pdf/98-11520.pdf).

At best, dicta from the Ninth Circuit in *In re Berg* put forward the notion that a showing of "[p]hysical harm to persons or property is" a "prerequisite" to a PAA action claiming ***bodily injury***. 293 F.3d at 1131. But six years later, the Ninth Circuit clarified that, "[a]lthough in *Berg* we referred to bodily injury as a jurisdictional prerequisite . . . we used the term 'jurisdictional' in the loose sense, perhaps too loose, to mean that medical monitoring claims were not compensable under the PAA absent physical injury." *In re Hanford*, 534 F.3d at 1009. Tetra Tech's attempt to erase Section 2014(q)'s "loss of use of property" clause should be rejected.

**2. Developers Suffered Loss of Use of Property**

Tetra Tech's assertion that Developers suffered no "physical injury or physical harm to property" thus does not end the inquiry on whether Developers' claims fail under the PAA. Mot. at 12. Rather, it opens up another disputed issue of material fact precluding summary judgment: whether Developers suffered "loss of use of property" under the PAA.

In interpreting the PAA, "property" should be interpreted "broadly both to effectuate the intent of Congress, and to give the word its everyday meaning in tort and contract law," which has "long established . . . that a business's property includes intangibles such as loss of profits and goodwill." *Radiation Sterilizers*, 867 F. Supp. at 1472. Ninth Circuit case law allows businesses to claim lost profits under loss-of-use theories. In *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, for example, the Ninth Circuit reinstated roughly $3.04 million in lost profits where municipal activities blocked a housing project and nothing physically damaged the land, because project-specific economics, anticipated sales, development costs, and expert valuation supplied reasonable certainty on damages. *See* 251 F.3d 814, 817–27 (9th Cir. 2001). Likewise, *Chalmers v. City of Los Angeles* affirmed $15,723 in lost profits where city directives prevented the commercial use of undamaged inventory. *See* 762 F.2d 753, 755–61 (9th Cir. 1985).

Here, Five Point has been deprived of property ***use*** in the most basic sense: because the Navy cannot transfer HPNS Phase II parcels until Tetra Tech's fraudulent remediation is re-done, Five Point cannot "use" any of the property. *See* Ex. F, Final Federal Facilities Agreement Schedule, April 2026; Ex. G, Totah Tr. at 28:15-17; 59:5-8 (Five Point has "not received one square foot of land at the shipyard"). Tetra Tech asserts that Five Point cannot recover under the

PAA because "it does not *own* the properties at issue," citing Mr. Totah's testimony that Five Point has "not received one square foot of land at the shipyard." Mot. at 10; *Id.* But that testimony addresses only *whether a transfer has occurred*—not whether Five Point *holds a cognizable property interest*. In fact, Five Point does have a cognizable property interest: under the DDA, Five Point has both the right to acquire possession of and to develop HPNS Phase II parcels. Ex. E, FP_0013099 at -119; -121; -122; -150. Thus, Tetra Tech's argument that Five Point cannot claim property injury because it does not "own" the parcels yet not only rests on a false premise, but ignores fundamental property law. Fee ownership is unnecessary to possess a property interest. Leaseholds qualify as property interests. *See Cnty. of San Diego v. Miller*, 13 Cal. 3d 684, 688 (1975). The United States Supreme Court has long recognized that "[v]alid contracts are property." *Lynch v. United States*, 292 U.S. 571, 579 (1934). California Civil Code §§ 654–655 likewise recognize property interests in rights to possess and use property, contractual obligations, and business goodwill. Further, under California law, "the owner of an unexercised option to purchase land possesses a property right." *Cnty. of San Diego*, 13 Cal. 3d at 693. Five Point's bargained-for rights under the DDA likewise constitute a present, enforceable property interest in acquiring and developing the parcels—an interest whose use Tetra Tech's fraud has frustrated. At minimum, Five Point's property interest in Phase II and the parties' positions create a genuine dispute of material fact, requiring denial of summary judgment.

Lennar, too, has been deprived of the use of its property: it has been forced to "mothball" development of the entire "Hillside" portion of Parcel A. *See* Lennar Compl. at ¶¶ 278; 283; 303; 310; Ex. J, December 17, 2024 Deposition of Lennar's 30(b)(6) Witness, Mike Hochstoeger, Vol. 2 ("Lennar 30(b)(6) Tr.") at 234:1-6; 261:25–262:9. Development of Hillside would "result in a loss," therefore rendering the development project infeasible, and leaving Lennar without a viable alternative use for the site. *Id.* at 263:17-20; *see also* Ex. K, March 18, 2025 Deposition of Paul Habibi ("Habibi Tr.") at 143:21-24; 144:12-15 (confirming Hillside project has a negative Net Present Value and noting that "if Lennar is going to mothball…Hillside, that would be largely because … this component of the project in isolation is NPV negative."). Lennar has suffered cognizable losses "such as loss of profits and goodwill" but has lost its ***sole intended use*** of its

property—residential development. *Radiation Sterilizers, Inc.*, 867 F. Supp. at 1472.

This "loss of use of property" presents at least a fact-intensive dispute precluding summary judgment. Tetra Tech cannot convert that fact dispute into a jurisdictional defect or resolve it against Developers on a self-serving, incomplete half-record. *See* Dintzer 56(d) Decl ¶¶ 16-19.

## V. <u>CONCLUSION</u>

Developers respectfully request that the Court deny Tetra Tech's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment in its entirety.

Dated: September 3, 2026

**O'MELVENY & MYERS LLP**

By: /s/ David Marroso

David Marroso

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DAVID MARROSO (S.B. #211655)
dmarroso@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

*Attorneys for Plaintiffs CPHP DEVELOPMENT, LLC; HPS DEVELOPMENT CO., LP; HPS1 BLOCK 50, LLC; HPS1 BLOCK 51, LLC; HPS1 BLOCK 53, LLC; HPS1 BLOCK 54, LLC; HPS1 BLOCK 55, LLC; HPS1 BLOCK 56/57, LLC, LENNAR CORPORATION; FIVE POINT HOLDINGS, LLC; and CP DEVELOPMENT CO., LLC*

Dated: September 3, 2026

**ALSTON & BIRD LLP**

By: /s/ *Jeffrey D. Dintzer*

JEFFREY D. DINTZER
jeffrey.dintzer@alston.com

350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100

*Attorney for Plaintiffs CPHP DEVELOPMENT, LLC; HPS DEVELOPMENT CO., LP; HPS1 BLOCK 50, LLC; HPS1 BLOCK 51, LLC; HPS1 BLOCK 53, LLC; HPS1 BLOCK 54, LLC; HPS1 BLOCK 55, LLC; HPS1 BLOCK 56/57, LLC, LENNAR CORPORATION; FIVE POINT HOLDINGS, LLC; and CP DEVELOPMENT CO., LLC*

**Civil Local Rule 5-1(i)(3) Attestation**

Pursuant to Local Rule 5-1(i)(3), I, David Marroso, the ECF filer of this document, hereby attest that I obtained concurrence in the filing of this document from each of the other signatories.

Date: September 3, 2026 By: /s/ [signature]

David Marroso